ARANZAMETA
ET AL.
*vs.*
LA. INSUR. CO.

**APPEAL FROM THE COURT OF THE FIRST DISTRICT.**

The terms in a policy of insurance, "free from average *unless general*," are convertible with those of "total loss," and to enable the assured to recover there must be a total destruction of value. Whether a total physical destruction? *Quere.*

The preservation of the thing insured up to the time of its arrival at an intermediate port and sale there, produces the same effect as a sale at the *terminus*, unless it be shewn the cargo could not be carried there, without a total loss being the inevitable consequence.

Where the insured by the terms of the policy take on themselves all risks, excepting a total loss of the thing insured, a partial destruction of the object at an intermediate port does not discharge the warranty.

The circumstance of the ship being a *general* one makes no difference in cases of this kind.

The facts are fully stated in the opinion of the court, delivered by

*Porter, J.*

This is an action on a policy of insurance, by which the defendants insured fifty hogsheads of tobacco on board the brig Sally-Ann, on a voyage from New Orleans to St. Johns, in Porto Rico, with liberty to touch at St. Thomas. By a memorandum annexed to the policy, the tobacco is warranted free from average, unless general.

The vessel, a short time after her departure from the port of Orleans, sprung a leak, and put into Pensacola in distress. While there a survey of the port-wardens was called, who ordered a part of the cargo to be discharged, to see if the leak could be discovered. In taking out the cargo, it was ascertained that twenty-three hogsheads of the tobacco were greatly damaged. They were ordered to be sold at public auction, and brought the gross sum of $519 25. Charges of various kinds reduced this amount to $355 84.

The brig remained a considerable time in this port, and, after having repaired the damages she had sustained, proceeded on her voyage. She again encountered bad weather, and finally reached St. Thomas on the 15th September.

The remaining twenty-seven hogsheads of tobacco were landed there, and a survey called on them. They were found damaged by sea-water, and a sale of them was recommended. They were sold at public auction, and the net proceeds of the sale were $451 43.

Eastern District,
*May* 1831.

ARANZEMENDI
ET AL.
*vs.*
LA. INSUR. CO.

The cause was summitted to a jury in the court below, who found a verdict for the plaintiffs. The judge confirmed it, and refused to grant a new trial. The defendants appealed.

The terms used in the policy, "free from average, unless general," are understood to be convertible with total loss; and under such a warranty by the insured, the law is perfectly settled in the United States, that there must be either a total physical destruction of the object insured, or a total destruction of value. Some of the cases, indeed, go so far as to require the former. But that now before us renders an opinion on this point unnecessary. It is too late to inquire into the reasons on which this rule is founded: the doctrine received a full discussion in this court, in the case of *Brooke* vs. *Louisiana State Insurance Company.* In our judgment, the construction put on the terms used in this policy by the English courts, is more consonant to reason, and to the supposed intention of parties *antecedent to any judicial decision,* than that universally adopted in the United States. But we yielded our opinions to the conviction, that the law was otherwise settled in this country, and that it was our duty to conform to it. After a determination so solemnly made, we cannot now retrace our steps. Parties are presumed to have shaped their contracts according to the law as it was understood and pronounced by the court. The inconvenience of the rule is nothing, when weighed with that which would result from unsettling it. A greater evil cannot be well inflicted on a community, than that produced by courts of justice receding from general rules, to meet their views of policy or equity. It has been argued in this case, that the rule being arbitrary and inequitable, it should be extended no

The terms in a policy of insurance "free from average unless general," are convertible with those of "total loss," and to enable the assured to recover, there must be a total destruction of value. Whether a total physical destruction? Query.

B3

Eastern District,
May 1831.

ARANZAMENDI
ET AL,
vs.
LA. INSUR. CO.

further than adjudged cases have already carried it. We think, on the contrary, that the rule must be applied, like every other rule, first to the case for which it was made, and then to all others which fall within the reason and principle on which it was established.

From the facts already stated, it appears there was neither an absolute physical destruction of the object insured, nor a total loss of the value. The thing continued to exist after the damage was sustained, and it sold for a sum exceeding $800, deducting all charges.

The appelless have endeavored to take this case out of the general rule, on these grounds:—1st. Because the property was lost before the ship reached the port of destination· 2d. Because it was so damaged that it could not be carried without imminent danger to the lives and health of the officers and crew; and that as they would have been justified in throwing it overboard, the rights of the insured cannot be impaired by their selling it. As the last point is connected with a bill of exceptions taken on the trial, we will examine it first.

When the cause was before the jury, the plaintiff's counsel requested the court to charge them, that if they believed the tobacco was in so putrid and corrupt a state from sea-damage, that it could not be transported to Porto Rico without imminent danger to the health of the crew, the captain was not bound to transport it there, and in that case the loss must be total. This was objected to by defendant's counsel, but the court overruled the objection, and charged the jury as requested; whereupon the defendants excepted.

Whether the court was correct, or not in the expression of this opinion to the jury, we need not stop to inquire; because the case before us for decision is not the case put in the bill of exceptions. The captain did not throw the tobacco overboard, but sold it at intermediate ports. No such reason as that now set up is assigned in his protests, nor is there a tittle of evidence that the health of his crew suffered by car-

Eastern District
*May* 1831.

ARANZAMENDI
ET AL.
*vs.*
LA. INSUR CO

rying a large portion of the property insured within ten hours' sail of the port of destination. What might have been the rights of the parties, if there had been an absolute physical destruction of the thing, from the cause mentioned, need not be examined, when, in consequence of a different course being pursued, there was neither a total loss in value, nor of species. The argument would be just as strong if the thing had reached the port of destination. The plaintiff, in that hypothesis, might say with equal force, "Pay me for a total loss, because I might legally have turned the injury I sustained into one." A preservation of the thing up to the time of its arrival at an intermediate port, and sale there, must have the same effect as at the *terminus* of the voyage, unless (in the most favorable point of view in which the law can be considered for the plaintiff) it is shewn the cargo could not have been carried there without a total loss being the inevitable consequence.—7 *East* 38.

This opinion disposes of the second ground taken by the plaintiff, and we proceed to the other.

The total loss of the property before the vessel reached the port of destination, would certainly form a proper ground on which the assured might claim indemnity; but in the instance before us there was not a total loss at the intermediate ports: on the contrary, it existed there in kind, and it was not without value. The attempt here is to turn a partial loss into a total loss, and, according to the rules established in the United States respecting memorandum articles, this cannot be done. (I. *Wheaton*, 225.) The insured took on themselves all risks, excepting a total loss of the thing insured; and a partial destruction at an intermediate port, does not necessarily discharge the warranty. The cases in our country are numerous to this point, and on facts not differing materially from these now before the court. In the present instance the cargo was not destroyed; it was merely diminished in value. The facts would not even

The preservation of the thing insured up to the time of its arrival at an intermediate port and sale there produces the same effect as a sale at the terminus, unless it be shewn the cargo could not be carried there without a total loss being the inevitable consequence.

Where the insured by the terms of the policy take on themselves all risks excepting a total loss of the thing insured, a partial destruction of the object at an intermediate port does not discharge the warranty.

Eastern District, bring the plaintiffs within the English rule, as we under-
*May* 1831.
stand it.   There was neither a total loss of the whole
ARANZAMENDI   cargo, nor of any particular portion of it;—the value of all
ET AL
*vs*        and every part of it was merely diminished.   In a late case
LA. INSUR. CO. before the King's Bench, where tobacco and sugar, insured
free from average unless general, was injured by the wreck
of the ship, after the risk had commenced, and before she
reached her port of destination, but was saved in a very
damaged state ; Lord Ellenborough said, "If this can be
converted into a total loss by abandonment, the clause ex-
cepting underwriters from particular average, may as well
be struck out of the policy.   We can only look at the time
when the goods were landed, and then it was not a total loss,
however unprofitable they might afterwards be."   Bayley,
Justice, observed, "The very object of this exception is to free
the underwriters from liability for damaged goods.   They
say, in effect, that they will be liable if the goods are wholly
lost, but not if they are only damaged."   The case, lately
decided in England, which is found in 5*th Maule and Sel-
wyn,* 447, cannot perhaps be reconciled entirely with that
just quoted from East; but it was peculiarly circumstanced,
and the latest writer of insurance in that country does not
seem to consider it to establish a different rule.   But even if
it did, it is the law of England, and on this subject the law in
the United States is perfectly settled.—16 *East,* 214.   14
*John.* 139.   1 *Wheaton,* 224—232.   3 *Caines,* 108.   15
*East,* 559.   3 *Kent's Com.* 247.   *Hughes on Ins.* 280—282.

But, it is said, that if the property had not been sold at
Pensacola and St. Thomas, it never could have reached the
port of destination.   Admitting this to furnish in law a ground
for recourse upon the insurers, it is evidently one which
must be received with great caution, and should be fully and
clearly proved.   It rests on conjecture and probability.   In
this case there is not even a presumption established
that, such was the situation of the whole of the proper-

Eastern District,
May 1831.

ARANZAMENDI
ET AL.
vs.
LA INSUR. CO.

ty insured. In relation to that portion of the tobacco which was disposed of at Pensacola, the idea may have some plausibility; in respect to that sold at St. Thomas, not the slightest. It is proved the latter port is within ten or fifteen hours' sail from St. Johns, which is to leeward, in a latitude where the trade-winds prevail; and that vessels are usually plying between the ports. And there is nothing in the evidence to at all countenance the position of the tobacco being so much damaged when taken out at St. Thomas, that it could not have been transported in the same state to the port of destination.

Again. It was urged this was a general ship, and that no case could be found where damaged property was sold from such a vessel, at a place short of the port of destination, and the insurers were not held responsible. The cases decided in the United States make no such distinction, nor is any good reason perceived by us why it should be made. Either the condition of the property authorized the sale, or it did not. If it did, then the act of the captain was the act of the party who owned the property, at least, it will have the same effect; because the law sanctioned and authorized it. If, on the contrary, the situation of the tobacco did not authorize the sale, because it was not unsound or damaged, then the assured is discharged; because, the presumption is, it could have reached the place of destination. In the last supposition the act of the captain was an act of barratry; and if recourse is sought from the underwriters on that ground, it should have been alleged in the petition.

*The circumstance of the ship being a general one makes no difference in cases of this kind.*

The influence due to the verdict of the jury has been strongly pressed on us. If the case turned on matters of fact alone, and the testimony was conflicting, it would deserve and receive all the influence to which counsel conceive it entitled. But the law, more than the facts, is the subject of contestation here. In relation to the latter we see no ground for a dispute. In such a case, and more particularly

<div style="margin-left:margin">Eastern District, June 1831.

ARANZEMENDI ET AL. *vs.* LA. INSUR. CO.</div>

where the judge charged the jury in such a manner as to lead them to believe that more weight was due to the right of the captain to throw the cargo overboard, than the fact authorized, the respect due to the finding is greatly diminished. We consider it a case in which our conclusions can be much more safely relied on.

It is therefore ordered, adjudged, and decreed, that the judgment of the District Court be annulled, avoided, and reversed. And it is further ordered and decreed, that there be judgment for defendants, with costs in both courts.