Ix,sxjEY, J.
The plaintiffs claim in this action, on an open marine policy of insurance, the sum of two thousand three hundred and thirty-nine dollars, the value of three invoices of goods, boots, shoes and caps, shipped by them at New York on the first August, 1856, on the ship Isaac Alberton, bound to New Orleans. The entry of the risk is under date of the 11th September, 1856, and it is only against general avei-age and absolute total loss.
The defendants plead the general issue, and they set up specially the character of the loss, which they aver was not an absolute total one.
The case was submitted to a jury, and from a judgment on their verdict in favor of the plaintiffs, the defendants have appealed.
The plaintiffs, having proved the insurance of their goods and their value, the question is presented, whether there was an absolute total loss of the goods.. If this is shown, the defendants are bound, but not otherwise.
The Isaac Alberton sailed from New York for New Orleans on the 7th August, 1856, and about the end of the same month, she was wrecked on a reef about twelve or fifteen miles from Key "West. She drifted over the reef, and sunk in four or five fathoms water, the whole of the vessel being submerged, except a part of the stern-rail.
Nearly all the cargo was saved.-by wreckers, except that portion of it which was destroyed or floated off when the wreckers, to get at the freight, blew up the decks. The goods saved were taken to Key West, libelled and condemned for salvage in the United States District Court, in that place, and subsequently sold, yielding, after the payment of costs, salvage, etc., some seven hundred and fifty dollars.
Before proceeding to examine the testimony in the record, we must determine the meaning of the words .in the policy, “absolute total loss,” whether they must be understood in their natural or in their legal sense. A very careful examination of the numerous authorities, which, by the industry of counsel have been furnished us, we are satisfied that the underwriters in this case insured only against the complete and absolute déstruction of -the thing insured, or its entire physical loss.
In Gueslain v. The Columbian Insurance Go., the insurance was upon goods specified in the margin, being beef, butter, soap, candles, apples and potatoes, and the policy contained the following written clause: “The assurers of this policy take no other risk than general average, and such total loss-as may arise by the absolute destruction of the property.” It appears that the ship being stranded, the cargo was unladen and stored. A part of the cargo was afterwards put aboard another vessel, and wrecked and lost. Part of the cargo, consisting of beef, candles, soap, apples and potatoes, perishable articles, was sold at Barnegat, at public auction, and the residue lost or stolen.
The Supreme Court said: “ The defendants are entitled to judgment. There is neither a case of general average, nor an absolute destruction of the property, andin no other event were the defendants to beliable. Theidea that for each item or article of the cargo which was totally lost, the defendants are liable, is not well fouir led. The insurance was upon so much cargo as an integral subject. In the French policies at Marseilles, certain perishable articles are declared free of average, general and par *261 ticular, which means that the underwriter is answerable only for an entire loss of the subject insured; and therefore, where a part of a cargo of wheat has been thrown overboard in case of extremity, the insurer has repeatedly been held not responsible. 1 Emery’s, O. 12, § 45. 7 Johnson’s R. 527.
In Murray v. Hatch, 6 Mass. R., the C.ourt says:,,, “ The memorandum is a restriction to some purpose, in every event insured against, that the insurer is in no case liable, unless a total loss be proved.”
In Nicholson v. Columbian Insurance Co., 3 Cain’s Rep. 110, theSupreihe Court of New York use this language: “ So long as the corn physically existed, there could not be a total loss. Though good for nothing, the defendants were not liable, being protected by the clause in the memorandum.” See also 1 Johnson’s cases, Wilson v. Smith, 3 Burrowes, 1350.
In this country, the above rule is uniformly recognized by the courts. There must be, to constitute an absolute total loss, “ a destruction of the thing in specie.” 1 Cain’s, 196; 3 Cain’s, 108; 1 John’s cases, 226; 3 ib, 321; 14 ib, 138; 18 ib, 208; 4 N. S. 640; 5 N. S. 520; 1 Wheat. 219;‘25 Pick. 415; 2 Summer, 245; 7 How. 605; and in Skinner v. Western Marine Insurance Company, 19 La. 274, this Court held that so long as the memorandum articles continue to be of any value, the underwriters are not liable for a total loss. • -
It seems, says Phillips, 1 vol. 487, that “ although such articles are so damaged as to be rendered absolutely of no value, still if they remain in specie, if they so subsist that they may still be properly designated by the same name, the underwriters are not liable for the loss.” And Kent, vol. 3, 295, states plainly the doctrine recognized by our courts. He says: “Although a total loss may exist in certain cases, when the voyage is defeated, yet in eases of perishable articles, within the memorandum, the insurer is secure against all damage to them, whether great or small, whether it defeats the voyage or only diminishes the price of the goods, unless the article is completely and entirely destroyed, so as no longer physically to exist.”
These authorities refer, it is true, to memorandum articles; -but á fortiori, the principle announced in them, becomes more applicable where a policy, as in this ease, apart from the risk of general average, places the insurer’s liability solely upon the event of an absolute total loss, and this doctrine is not shaken by the authorities relied on by plaintiffs in 14 Conn. 60; 25 Ward. 618; 6 Cowan, 270; and 19 An. 42. The plaintiff’s position, that a sale for salvage is an absolute total loss, cannot be maintained either upon principle or authority. - '
It is in conflict with the Gueslain case, in which memorandum articles were, as we have seen, sold at Barnegat. It is not concordant with the case of Aranzamendi et al. v. Lou. Ins. Co., 2 La. 432, in which, in a very elaborate and able opinion, rendered by Mr. Justice Porter, as the organ of the court, it is said: “A preservation of the thing up tcvthe time "of its arrival at an intermediate port and sale there, must have the same effect as at the terminus of the voyage, unless (in the most favorable point of view, in which the law can be considered for the plaintiff) it is'shown the cargo could not have been carried there without a total loss being the inevitable consequence. ”
*262 The sale of insured property for salvage is not beyond the control of the owner of it. It is indeed entirely optional with him, whether he will have it sold or not. It is laid down as a rule, in Benedict’s Admiralty Practice, $444, p. 244, ed. 1850, that “instead of a sale, the Court may, oil. the application of the claimant, under an appraisement of the property to be made, order the same to be delivered to the claimant, on his depositing in court so much money as the Court shall direct; or the Court ma,y order it to be delivered to him, on his giving a stipulation with sureties in such sum as the Court shall direct to pay the money awarded, and abide the final decree rendered by the Court, if any appeal be taken. Orders for sale or delivery may be taken at any time, as well in vacation, as in term.”
: Arnould, p. 1004, referred to by the plaintiffs, shows, as we think, quite clearly, that salvage cannot be considered as an absolute total loss, but a mere constructive loss. This is his language: “If the ship founders at sea, or goods go in bulk to the bottom of the ocean, so as to leave no assignable chance of their recovery; this 4s a clear case of absolute total loss. If, on the other hand, they are merely submerged in shallow water, so there is a chance of getting them up again, though at a cost probably greater than their value when recovered, this is only a constructive total loss, and, the insured to recover the whole amount of insurance must give due notice of an abandonment.
Having disposed of the question of law, we will now proceed to ascertain and determine whether there was, in point of fact, an absolute total loss of the plaintiffs’ goods insured by the defendant. This, it devolved on, the plaintiffs, under the plea of the general issue, to prove.
None of the goods, lost or destroyed by the acts of the wreckers, are' shown to have belonged to the plaintiffs. The remainder of the cargo was saved, or to use the plaintiff’s language, “fished up,” and among the cargo thus saved were boxes and packages, with marks upon them.
So far from the plaintiffs’ goods having been lost or destroyed in specie, there is a strong probability that they were saved. Without attaching too much significance to the fact that the plaintiffs were engaged in collecting, and did collect evidence at Key West, to be used on the trial of this case, no light is shed by them by the production of the record of the case in admiralty there, as to the true state of the case. There was certainly an average adjustment, which is not in the record, upon which the plaintiffs figured as sharers of the proceeds of the net proceeds of the cargo of the wrecked ship, and to recover their distribute share in these proceeds, the plaintiffs appointed John T. Adams their special agent. By the subjoined extract of their letter to the defendant, written in December, 1857, it may be well inferred that the plaintiffs’ goods were saved in specie. They say: “ The goods were an actual total loss to us, so far as they were of use to us in our business, they could not have been sold as an article of merchandise, having been under water a long time, and were fished up from a depth of twenty feet, the deck of the wreck being reported such to that depth. It is well known that the articles composing our invoice, when so completely saturated with salt-water, never dry thoroughly; the salt reappears, whenever the atmosphere becomes damp. ”
*263 They go on then to give their interpretation of the words absolute total loss, which they do not constrne to mean the physical destruction of property thus insured against; but, as in their own case, the small' per centage realized upon the amount of the insurance.
Being satisfied that the plaintiffs have failed to make out their tardy suit, which was only brought two years after the loss of the.ship, it is’ unnecessary to examine the defendant’s bill of exceptions, nor to determine whether there was any suppressio veri on the part of the plaintiffs, when insuring their goods a considerable time after the shipwreck.
We are of opinion that the judgment of the District Court should be reversed.
It is therefore ordered, adjudged and decreed, that the verdict of the jury be set aside, and the judgment- appealed from be annulled, avoided and reversed; and proceeding to give the judgment, which, under the -' law and facts of the case, should have been rendered in the court below. It is ordered, adjudged and decreed, that judgment be and it is hereby' rendered in favor of the defendant, the Louisiana Mutual Insurance Co., and against the plaintiffs, J. M. Gould & Co., and that the said plaintiffs and appellees pay the costs in both courts.
P ‘UHcm for Rehearing, by plaintiffs. — The plaintiffs solicit a rehearing ' on the following grounds, to-wit:
1. The Court erred in deciding that nearly all the cargo was ss ved by wreckers.
2. It erred in holding that absolute total loss means the complete and absolute destruction of the thing insured, or its entire physical loss; and in saying that this rule was uniformly recognized by the courts in this country.
3. It erred in applying to this case the principle applicable to memorandum articles.
I. The plaintiffs were not guilty of laches as charged by the Court, for' not intervening in the suit for -salvage at Key West, as they were not' aware of the existence of the suit until long after its termination.
5. After the plaintiffs had shown the destruction of the ship, and non-arrival of the cargo at the port of destination, it was not incumbent upon thorn under the general issue, toshow the total loss of their goods.
6. The Court erroneously held that a strong probability existed that the plaintiffs’ goods were saved. Whether they or any part of them, were or were not saved, was a question of fact peculiarly within the pr wince of the jury, whose verdict negatives the idea that any of them were saved.
7. The Court erred, in inferring that the plaintiffs’ goods were saved from their letter, appointing Adams their agent.
Rehearing refused.