*late if the judgment on it be perfected, yet, on a strong case of merits, it may be done on payment of costs, if the irregularity be merely the want of filing a paper served.*

ings. There was a distinction to be taken he said, between the circumstances here, and those in *Shephard ads. Case*, Cole. 90. There, the plaintiff had done no act to waive the default, and therefore as it stood in full force, his perfecting his judgment afterwards was regular; but in the present instance, he had, by joining issue and noticing for trial, waived the mere form of filing the plea, and had no default on which to rest. He had himself, knocked away the foundation, on which he stood. As to the want of filing the plea, that was a mere form, and the court would order it to be done on the suggestion of the plaintiff himself. *Cohan ads. Kip*, Cole. 45.

*Evertson* contra. This is not to be distinguished from *Shephard ads. Case*. The plaintiff could not waive that which he did not know.

*Per curiam.* The omission of filing the plea, not being known when issue was joined, or the cause noticed, cannot be cured by those acts. The principle therefore of *Shephard ads. Case*, applies. Though there is a strong affidavit of merits, we can relieve only on terms; those must be payment of costs, and filing the plea *instanter*.

## William Neilson and others *against* the Columbian Insurance Compony.

*If the articles contained in the memorandum in a policy respecting corn &c physically exist the underwriter is not liable for a total loss. on account of their being perfectly rotten. When the assured rests on a loss of voyage to warrant his recovery he should shew it most clearly, and of this a survey is always a proof of good faith.*

UPON a policy on two thousand three hundred bushels of corn, from *New-York* to *Madeira*, with the usual memorandum excluding grain &c. from average unless general, effected on account of *Joaquim de Barros*, a Portugese, resident at *Bonavista*, and master of the vessel in which laden.

The ship, after a passage of more than 40 days, in which, she was under a necessity of throwing over board 500 bushels of her cargo, arrived at the north side of the island, where she was obliged to come to. as a southerly wind then blowing, rendered it impossible to go round to the harbour of *Funchall*. While thus at anchor, a vessel hove in sight, from whose manoeuvres imagining her a privateer or pirate, they weighed and stood to the eastward, the strange sail following the same course. During the night they lost sight of her. but whilst keeping on they concluded, from the state of the vessel and crew, in consequence of the bad weather they had experienced, to run for the *Cape de Verds*, as they

were in want of water, and might fall in with the privateer in at- NEW-YORK, May, 1805. tempting to regain their port of destination, which, even after making it. they would be unable, from the continuance of the Neilson&others v. C. I. Company. south wind, to enter. In two days from the making this determination ; they fell in with the trade winds, and in 9 or 10, after putting about for the *Cape de Verds*, reached *Bonavista*, where, The point ought also to be specifically sub- mitted to the jury. upon opening the hatches, the corn was found so damaged and offensive, that it was forbidden to be landed, but was sold, as it lay on board for about 400 dollars. Here they remained 30 days, and received some partial supplies from other vessels ; but not having it in their power to procure materials or workmen, to repair the sea-damage sustained on the voyage, the captain sailed for *Bravo* to refit. This island however, he was unable to fetch, and therefore, made for *St. Vincent's*, another of the *Cape de Verds*, at which he repaired the residue of the injuries his ship had suffered in her quarterboards and seams, and from the loss of her main and jib boom. This being accomplished the vessel sailed on a voyage to *Lisbon*, and no claim was ever made against the underwriter on her.

It was in evidence, that with a south wind, the assured might in 3 or 4 days after leaving *Madera* have reached *Lisbon*, or *Mogadore* ; that in going to *Bonavista* she must have passed the *Canaries*, that at either of these places she might have been repaired and that the winds at *Madeira* and along the coast to the *Cape de Verds*, were as variable as at *New-York*. The testimony however, against this was, that after failing in with the trade winds, it was impossible to reach *Lisbon* ; that the supposition of a war between *Spain* and *Portugal*, prevented touching at the *Canaries*, and the constant hostilities between the *Moors* and *Portuguese* forbade the going to *Mogadore*.

Upon this evidence the judge charged, that if. on reaching its port of destination. the grain was " of no value as nutriment " for men." it made the loss total. But, that he left it to them to determine, whether the vessel could, or ought to have gone to any port nearer then *Bonavista*, where she might have been repaired. That if this could have been done. and the vessel had afterwards arrived at *Madeira*, the loss would have been a general average only.

The jury found a verdict for a total loss, to set aside which, the defendants now applied, for misdirection and as being contrary to evidence.

NEW-YORK,
May, 1805.

Neilson &others
v.
C. I. Company.

*Bogert*, in support of the motion. Under the clause contain-
ed in the policy, the insurers were protected from all average losses
except such as might be general. For the decay of those arti-
cles, specified in the memorandum, the underwriter is never
liable ; were he to be so, a deterioration to half the value would
be cause of abandonment. A proposition that is not to be main-
tained. Nothing short of the annihilation of the subject matter,
can make the loss total, and it is immaterial whether the com-
modity be at a port of necessity, or that of its destination. *Cock-
ing* v. *Frazer*, *Park* 114. But, without recurring to the English
authorities, the decision in this court, in *Maggrath* and *Higgins* v.
*J. B. Church*, 1 *N. Y. T. R.* 196, is in point. To capacitate the
assured to recover, except for an average loss, it must be shewn
that the voyage was defeated, by the vessel's not being in a con-
dition to proceed. The case ought to have been submitted on
this alone ; and then we say, the evidence will not support the
verdict. The whole tenor of the master's conduct shews an en-
deavour to create a pretext for defeating the voyage, that he
might claim a total loss.

*T. L. Ogden* and *Hoffman* contra. We admit that no intrinsic
damage will warrant a claim on the underwriter. But if the
voyage be defeated, then whether the article be perfectly sound,
or perfectly rotten, he is liable. It was certainly justifiable to
leave *Madeira* on sight of a vessel apparently hostile. On the
third day after this, the trade winds were fallen in with, and ren-
dered it impossible to do otherwise than bear away. This, and
the other circumstances. excuse the not going to any place nearer
than *Bonavista*. The impossibilitiy of repairs there, defeated the
voyage ; it was there broken up, and the cargo sold. That the
vessel was afterwards made fit for sea, is no argument against
this conclusion ; for if it be allowed, nothing short of the des-
truction of the ship would be a loss of voyage. A reparation at
any indefinite period of time, would be a bar to a recovery.

*Pendleton*, in reply, was stopped by the court.

*Per curiam.* A new trial must be awarded with costs to abide
the event of the suit. The charge of the judge, as stated in the
case was clearly wrong. So long as the corn physically existed,
there could not be a total loss. Though good for nothing, the de-
fendants were not liable, being protected by the clause in the
memorandum. The direction was contrary to our determination
in *Maggrath* and *Higgins* v. *Church*. It ought also to have been

left to the jury, as a material point whether the vessel could not have been repaired at the *Cape de Verd Islands*, so as to perform her voyage. This does not appear to have been distinctly sub- mitted.

LIVINGSTON, J. I think when the underwritten wishes a jury to find for him, on account of a loss of voyage from the vessel's not being able to reach her port, or for want of repairs, it ought to be very fully shewn. There was no survey in this case ; and though I do not say, *that* fact is absolutely necessary, yet it is always a circumstance evincive of good faith.