By the Court, Monell, J.
The single question presented in this case is, whether the defendants are liable upon their policy, as for a total loss of the property insured. The words “ free from particular average,” in the policy, are understood to mean free from partial loss, and are equivalent to “free of average,” or “ free of average except general.” Such a policy is an insurance against a total physical loss only. Underwriters, being unwilling to indemnify against the deterioration of perishable property, stipulate to pay only in the event of a total loss of the thing insured, by reason of any of the perils insured against. The contract between the parties was, that the defendants would indemify the plaintiff for a total loss of the property insured; for any thing less than a total loss they should not be liable ; and such is the precise meaning of the words “ free of particular average.”
The words “ total loss ” have received much judicial construction. In a literal sense, they mean complete physical annihilation and destruction of the thing; in another and more liberal sense, they signify a loss total to the owner, as where the goods are seized and taken away, or are rendered worthléss for the uses or. purposes for which they were designed.
It is obvious from the nature of the contract of indemity, that the loss must be actually or constructively total.
The doctrine which prevails in this state, and I may say in the country generally, is that if' the goods insured arrive at the port of destination, existing in specie, the underwriters are not liable, although the goods are of no value whatever. Thus, fish absolutely spoiled, (Cocking v. Frazer, Park on Ins. 151,) and corn which was putrid, (Neilson v. Columbian Ins. Co., 3 Caines, 108,) were held to exist in specie. .
In this state the construction of these contracts has been rigidly strict. The courts have, with great uniformity and unanimity, required a total annihilation of the subject insured; or that it should be in such a state as to have lost all appearances of what it was; in other words, that it no longer existed in specie. •
The English rule has been somewhat moderated by recent *537 decisions, it "being now held that if the article has become valueless, or if the expense of shipping it to the port of discharge would be equal to its value there, it is a total and not a partial loss. (Moss v. Smith, 9 Com. B. 94. Rosetto v. Gurney, 11 id. 176.) Such a rule is undoubtedly founded in common sense, as well as in common justice. The underwriters stipulate against a total loss, and it is violently straining the meaning of words if a complete and entire loss of the thing to the assured by reason of its entire loss of value, is not a total loss. If perishable goods arrive at the port of destination so damaged by the perils of the sea as to be absolutely of no value whatever, the loss is as. complete to the assured as if they were sunken to the bottom, or thrown broadcast upon the surface of the seas, beyond the reach of human power to recover.
The condition, “free of particular average,” and similar conditions, were designed to protect the underwriters from liability for partial loss to perishable goods, by inherent perish-ability ; but it was never intended to absolve the insurers from losses total in their nature by reason of the destruction of all value to the thing insured, although in appearance it retains a semblance of what it was It is not unfair towards underwriters to insist that the total loss of value in the thing insured, is within the spirit and intent, if not within the letter, of the contract. Their indemnity is against a total loss, and there can be no difference between annihilation and complete loss o'f value.
The reasoning in favor of annihilation, or a total destruction of the species, is not satisfactory. It requires that the species itself should disappear ; that the form should become changed, and their original character be entirely lost by decomposition. It seems to me this is shutting in, within very narrow limits, the obligations which underwriters impose upon themselves by their contract, and leaves but little scope for indemnity to the assured.
It may be regarded, I think, as another step towards moderating the views long entertained of the precise extent of the *538 underwriters’ liability, that judges in England, at least, are attaching the liability for .total loss of value, as well as for total loss by annihilation ; and were we allowed to follow the modem English cases, (to some of which I have referred,) we should find enough to sustain the verdict in this case.
The current of decisions, however, in this state, is so strong and uniform that we are forced, by their authority, to ignore the more just and reasonable rule, now seemingly being adopted by the English courts.
From the earliest reported cases in this state, (Magrath v. Church, 1 Caines, 196,) down to the present time, (DePeyster v. Sun Mutual Ins. Co., 19 N. Y. Rep. 272,) our courts have adhered to the doctrine that there must be an actual destruction of the article, and not such a technical loss as would authorize an abandonment. Hence, if any part of the insured property arrives at the port of destination, in specie, although utterly valueless, the underwriters are not liable.
We are not at liberty to disregard law so long and so thoroughly settled, and although opposed, in our. judgment, to the true spirit and meaning of the contract of indemnity, we must nevertheless yield to its authority.
A portion of the coffee covered by the defendants’ policy was recovered, and arrived in specie, at the port of destination. Mr. Parsons says, (2 Pars. Mar. Law, 381,) that the primitive meaning of the word specie is “ appearance,” and it is in this sense that it is commonly applied to memorandum articles. Nearly all the witnesses testified that the coffee which arrived here from the wreck retained the appearance of coffee. It was in the kernel or berry, and although so damaged by sea water as to be absolutely of no value, it nevertheless bore the resemblance of the article, and could readily be recognized as coffee. It therefore (within the cases in this state) arrived at this port in specie, and the underwriters are relieved from liability. Strictum jus alone can uphold such a result.
The special findings of the jury do not help the plaintiffs’ case. The question is, did the coffee arrive here in specie ? *539 The instrumentalities used to effectuate the arrival are of no consequence; and I can see no reason why the defendants could not with propriety, to make the loss partial, employ wreckers or others to rescue the cargo. Certainly, in the absence of any fraud or overreaching, they had the right to avoid liability by saving the property insured. Nor is their doing so any evidence of an acceptance of a supposed abandonment to them, by the assured ; especially after their denial of the right to abandon.
The law of this state, as applied to the facts of this case, being opposed to a recovery by the plaintiff, it was error in the judge to refuse to dismiss the complaint. The objection was therefore well taken. The verdict must be set aside, and there must be a new trial, with costs to the defendants, to abide the event.
Moncrief, J. concurred.