DAVID WALLERSTEIN and DAVID KUNST, Appellants, v. THE COLUMBIAN INSURANCE COMPANY, Respondent.

Owners of merchandise insured against perils of the seas, "free of particular average only," are entitled to recover as for a total loss, although some portion of the goods may be brought into port in specie, if the right to abandon is exercised during the continuance of the peril and there is a total loss of value to the owner. Total physical loss is not necessary.

(Argued September 28th; decided December 29th, 1870.)

THIS appeal is from an order made January 10, 1866, at a General Term, in the Superior Court of the city of New York, setting aside a verdict for the plaintiffs below and awarding a new trial. The plaintiffs appealed to the Court of Appeals, January 16, 1866, assenting that in case of affirmance an absolute judgment be rendered against them.

The action was brought against the defendants as insurers on cargo, September 25, 1863, by the plaintiffs, as the insured shippers thereof, for a total loss. It was a common cargo policy, except in being confined to *total* loss. It was expressed to be on vessels, &c., "*from ports in Europe to New York, on merchandise, free of particular average only.*" "Touching the perils which the company takes upon itself," it is declared in the policy that "they are of the seas, and all other perils, losses and misfortunes that shall come to the

hurt, detriment or damage of the said merchandise, *or any part thereof.*"

The italicized words are in manuscript. The rest is part of the common printed form.

The defendants answered that the loss was not *total.*

The case was tried April 26, 1865. The plaintiffs had a verdict for $22,383 $\frac{86}{100}$. And the judge directed that the defendants' exceptions be heard at the General Term, in the first instance. In the meantime judgment was suspended.

The plaintiffs, at Havre, France, shipped on board of the ship Mortimer Livingston, bound for New York, 801 bags of coffee, worth $27,427, and sixty-four bales of wool, worth $3,961. During the voyage, and on January 24, 1863, the vessel encountered a violent gale near Cape May, New Jersey. She was thereby wrecked and totally lost off that place. She sunk in the sand, and remained imbedded therein. At full tide the water was over her main deck. Her cargo was submerged. This was seventy miles from New York.

The plaintiffs abandoned to the underwriters. The latter refused to accept the abandonment. Due notice and proof of loss and of interest were given.

On advice of the disaster reaching New York, Boyd & Hincken, of that city, agents for the ship owners, assuming, in the emergency, to act for the benefit of all whom it might concern, made a written agreement with a company of wreckers, on February 6, 1863. The wreckers were to save and deliver in New York as much of the cargo and materials as could be saved, and to receive sixty per cent of the net proceeds, to be ascertained either by auction sale or appraisement. Sixty-one bales of plaintiffs' wool were accordingly brought to New York, delivered to Boyd & Hincken, and by them sold at public auction for $1,100.02 over and above the auctioneer's charges. Some of the coffee, swollen with sea water and discolored, was taken out by means of a dipper fixed to a hook at the end of a long pole. It was placed in 203 new bags, sent up to New York, and there sold, in two lots, at auction. It produced in all $2 $\frac{44}{100}$ over the auctioneer's charges.

There was evidence to show, and the jury found, that getting up the coffee grains, and bagging and transporting them to New York, was the act of the company itself, and a contrivance to convert a loss actually total into a loss constructively partial. The case below is reported in 3 Robertson, p. 528.

*Charles O'Conor*, for the appellants, urged with others, the following points:

1st. The warranty against particular average is only intended to exempt the underwriters from liability for any mere deterioration of, or injury to, a subject insured, and for any loss or expense incurred in consequence of such deterioration or injury. Consequently, the defendants were liable for the value of all the coffee and wool which, not being brought off from the wreck, was totally lost. Whatever may be the inferences deducible from judicial dicta, this is manifestly the import of the warranty. (Mr. Justice SHEE's note No. 1 to Marshall on Ins., 603, 5th ed.) No part of the printed matter contained in a policy which can be reconciled with the portion in manuscript, is set aside by the latter. (Phillips on Ins., § 125; *Coster* v. *Phœnix Ins., Co.*, 2 Wash. C. C. R., 53; *Delonguemare* v. *Tradesmen's Ins. Co.*. 2 Hall, 623, 628; *Wallace* v. *Ins. Co.*, 4 Miller's Louisiana R., 291; *Robertson* v. *French*, 4 East., 136.) By the express terms of this particular policy, all perils of the sea to "any part" of the property put at risk are insured against, unless it be an average or partial loss to such part. This is manifestly an insurance against the total loss of any distinct part.

2d. Under the most rigorous and unfavorable view as against the insured which has ever been taken of the clause in question, the underwriter is liable for the total loss of a distinct species; as, for instance, an entire loss in this case of the wool or of the coffee. Though shipped in the same vessel and constituting part of the same cargo, each distinct species is regarded as the subject of a distinct insurance within the true intent and proper application of the warranty against

particular average. (*Biays* v. *Cheaspeake Ins. Co.*, 7 Cranch, 418; *Humphreys* v. *Union Ins. Co.*, 3 Mason, 440; *Guerlain* v. *Columbian Ins. Co.*, 7 Johns., 527; *Brooke* v. *Louisiana State Ins. Co.*, 4th Martin, N. S., 640; *Same* v. *Same*, 5th Martin, N. S., 530; *Wadsworth* v. *Pacific Ins. Co.*, 4 Wend., 40, 41, 44; *Newlin* v. *Ins. Co.*, 20 Penn. R., 317; *Ins. Co.* v. *Bland & Coleman*, 9 Dana R., 154 to 157, 148; *Williams* v. *Cole*, 4 Shepley's Maine R., 209; Professor Sharswood, in his note to vol. 67 of the English Com. Law Reports, Phila., citing 2 Arnould on Ins., 855; *Ralli* v. *Jansen*, 6 Ellis & Blackburn, 446; see comment on this, 3 Com. Bench, N. S., J. Scott, 19; *Duff* v. *Mackenzie*, 3 Com. Bench, N. S., 16; *Wilkinson* v. *Hyde*, 3 Com. Bench, N. S., 30; Baily on the Perils of the Sea, 23, 24, 25; Shee's Marshall on Insurance, 182, note *b*.)

3d. During the voyage, and before its termination, there was, in every sense of the word, and for every purpose of honest commerce, an absolutely total loss of the coffee, by a peril insured against. This entitled the plaintiffs to recover, and nothing ever happened to change the character of this loss. A marine insurance is always upon the adventure; *i. e.*, the voyage, as well as upon the ship, the goods or the freight. Consequently, if, by a peril insured against, the ship becomes innavigable during the voyage, there is always a total loss as to the ship, unless it is practicable to repair her, and also as to the cargo and the freight, unless it is practicable to repair the ship or to procure other means of carrying the cargo to its port of destination. And all the determinations, English or American, hold that in every case arising in this branch of the law, practicability is not a fact in physics, but a commercial or business question; and, accordingly, as what cannot be done usefully or beneficially, ought not, in point of good sense or good morals, to be done at all, it is impracticable. As to the ship, the question is, can she be repaired at less cost than her entire value when repaired. As the danger of loss on the freight is a consequence of the innavigability of the ship, the question is the same, with this addition, that if the

ship be hopelessly lost and the insured on freight can send on the cargo and earn the freight by means accessible at the place of the disaster (18 Johns. R., 210), and without incurring an extra expenditure, exceeding or equal to the whole amount of the freight, he is, as between himself and his insurer, bound to do so. And, as this step would save some part of the thing at risk, there could never be in this case a total loss on freight. But it will be seen that this duty of the ship owner to his insurer on freight, and of course his ship master's duty to him, does not arise, if the cost of transhipment and transportation exceeds the whole original freight. (*De Candra* v. *Swann*, 16 J. Scott's Com. B. Rep. N. S., 793, 794; *Lemont* v. *Lord*, 52 Maine R., 393, 394, 399.) The same principle applies as between insurer and insured on cargo. If the vessel be totally lost, or her repairs be impracticable within the above rule, the contract of affreightment is dissolved by the sea peril which has supervened. The ship owner is not bound to send on the goods; but he may do so and earn his freight. If he could not do so without great loss and damage to himself and to the owner of the goods, the act would be wantonly mischievious, not within the sphere of that good faith required in the performance of all contracts, and, of course, unjustifiable. The carriage in the designated ship which is the primary object of the insurance, being wholly defeated by a peril insured against, no duty devolves upon the owner of the cargo except such as good sense would impose on him if uninsured; *i. e.*, to cause the goods to be carried to the port of destination if it can be done by any means within his control, and not involving a cost beyond their value at the port of destination. If this cannot be done the loss remains total.

4th. The adventure or voyage insured having been brought to a forcible termination by a peril insured against, and no duty existing on the part of the ship owner to send forward the coffee, and he having determined not to do so, neither the owner of the cargo nor the ship master was bound to take up at an enormous expense by spoonfuls from beneath the sea

and carry to the port of destination the ruined and worthless coffee grains which it was physically possible thus to deal with. (*Mr. Hare's note to Moreau* v. *U. S. Insp.*, 2 Am. Leading Cases, 533, middle paragraph and page 536. Anything said to the contrary in *Hugg* v. *The Augusta Ins. Co.*, (7 How. U. S. R. 595), is not revelant. Phillips on Ins., § 1770, 5th ed.; *Parry* v. *Aberdein*, 9 Barn & Cresw., 411; *Farnsworth* v. *Hyde*, 18 J. Scott's N. S. Com. Bench R., 856–857; *Rosette* v. *Gurney*, 11 Com. Bench R., 2 J. Scott, 187–190; *Roux* v. *Salvador*, 3 Bingh. N. C., 188; *Poole* v. *The Protection Ins. Co.*, 14 Conn. R., 47, 58, 59, per STORRS, Ch. J.) After the ship becomes innavigable and irreparable, if freight cannot be profitably saved by transhipment, the master, by a rule of law founded on the necessity of the case, becomes the agent of the owner of the cargo. In this new relation he is bound to the same faithful conduct toward his new principal as he, and indeed every agent, is bound in all other cases. He is neither bound nor at liberty to save the cargo at a cost which would render such saving an injury to the owner of the cargo. (See *De Candra* v. *Swann*, and *Lemont* v. *Lord*, before cited; *Treadwell* v. *Union Insurance Co.*, 6 Cow., 274.) The underwriters had the moral sense to be ashamed of their unworthy artifice in fishing up some grains of the coffee, and strove, by the prevarication of their agent, to conceal it. It was an act without precedent in the reported cases, and was an attempted fraud upon their contract. It was not a lawful or proper carriage of cargo to the port of destination, and had no effect beyond proving the tricky character of the underwriters, except to show what was demonstrable by reasoning and common experience, without any cost, *i. e.*, that it was physically possible to pick up from the sea some scraps of the cargo of a wrecked ship, and to carry them to the port of destination. The case of the first submarine telegraphic cable, proves that this can be done whenever the wreck's location is known. *Bryan* v. *N. Y. Ins. Co.* (25 Wend., 618) is in point against the defendants. The court below was entirely mistaken in supposing that on this point there was

an irresistible current of authority in this State, to which "common sense and common justice" must yield. So far from it, there is no conflict between the English or the other American authorities and those decided in New York. In the first place it should be observed, that no authorities anywhere recognize a difference in the principle of decision, between an actual arrival *de facto* at the port of destination and a practicability of carrying the cargo thither. *Cocking* v. *Frazer* (4 Douglas R., 295) was of the former class. *Le Roy* v. *Gouverneur* (1 John's Cases, 226) and *Magrath* v. *Church* (1 Caines' N. Y. R., 196), were both actions on the same policy and for the same loss (1 Caines, 214), and were of the latter class. (1 John's Cases, 226.) Every one of the New York cases cited was of the latter class. In *Cocking* v. *Frazer* (4 Douglas, 295), the ship arrived at her destination. There was no evidence of any loss, total or partial, of either voyage, ship, freight, or cargo, by any peril insured against. For aught that appears, all the damage to the fish arose from inherent defect, without even the coöperation of any peril of the seas. This was the very thing the insured had agreed should not give him any claim. Some expressions of Lord MANSFIELD and Mr. J. BULLER, about loss of value, not at all pertinent to the point now under consideration, have given rise to adverse criticism and speculations almost pointless (7 How. U. S. R., 606) between a loss of the thing and a loss in value. (See these counter-cases cited in note to 4 Douglas, 295, and in opinion of McCUNN, J., in the court below.) The New York cases, going upon the doctrine of *Cocking* v. *Frazer*, are fully explained by KENT, J., delivering the opinion of the court in *Magrath* v. *Church* (1 Caines, 213). He plainly reconciles all the cases by stating in substance, that an underwriter on cargo insuring against total loss only, is liable "not only when the article is actually destroyed, but when the voyage is lost by some loss or peril not arising from damage to the article." He says: * * "The ship was ready for the voyage; but it was given up in consequence of the unmerchantable condition of the cargo. * * This was evidently

the real cause of the loss of the voyage; and therefore neither this nor the former decision (*Le Roy* v. *Gouverneur*, 1 Johns. Cases, 226), for the very same loss, apply to the case of a loss of voyage from injuries *distinct from those happening to the perishable articles.*" The italics are used by the learned judge. And the Supreme Court of U. S., in *Moreau* v. *U. S. Ins. Co.* (2 Am. Leading Cases, 515 per WASHINGTON), shows distinctly that this is the point of the New York cases. There is no discrepancy between them and the more modern English cases. The modern English cases which are supposed by the insurers and the court below to conflict with *Cocking* v. *Frazer*, are really quite consistent with it. They merely hold, that an insured is not bound, at any expense, however enormous, to rescue from the present loss, substantially total, a cargo utterly lost and ruined by shipwreck on the voyage, and to carry it to the port of destination in order to create a nominal but sham delivery in exoneration of the insurers. If the coffee had been brought to New York by the wreckers, it would not have entitled the ship-owners to freight, or barred a claim for a total loss on the policy in suit. When a salvor brings home goods from a wreck, the ship-owner does not thereby acquire a title to freight. The owner, if he accepts the goods, pays salvage for the actual and beneficial service which was rendered by the wrecker, instead of freight for the service unsuccessfully attempted by the ship-owner. (*Dunnett* v. *Tomhagen*, 3 Johns., 156.) The operation of fishing out of the ocean and carrying home the so-called coffee, if it had been useful or proper and had been performed by the wreckers, would not have been a salvage service. The idea of general average was wholly inapplicable to it. (*Heyliger* v. *Fireman's Ins. Co.*, 11 Johns., 85; *Lewis* v. *Williams*, 1 Hall's R., 443, 444; *Great Ind. Peninsula R. Co.* v. *Saunders*, 1 Best & Smith, 52.) Where every other circumstance, necessary to constitute a physical total loss in every sense, is found to concur, the fact that some part of insignificant value is saved by extraordinary effort, stimulated by the hope of extraordinary gain, will

not prevent the loss from being deemed total, within the true intent and meaning of the clause in question. (*Bryan and Maitland* v. *New York Ins. Co.*, 25 Wend., 618.) All the acts of Boyd & Hickson, and of the wreckers, were, as it respects the interest of Wallerstein & Kunst in the coffee, illegal and tortious. No part of it ever came in any way to the use of Wallerstein & Kunst. (*The Hamburg*, 32 L. J., N. S., Adm. 161; *S. C.* on appeal, *Durant* v. *Hart et al.*, 33 L. J., N. S., Adm., 116; *Richardson* v. *Young*, 38 Penn. R., 175; *Bryant* v. *Comth. Ins. Co.*, 13 Pick., 552, 553.)

*Dudley Field*, for the respondents, the following:

1st. It is the settled rule in this State, and in most of the United States, that under an insurance, free from particular average, no recovery can be had, if the goods insured arrive in specie at the port of destination, even though they be utterly worthless. (*Moreau* v. *U. S. Ins. Co.*, 1 Wheat., 219; *Skinner* v. *Western Ins. Co.*, 19 La., 273; 2 Parsons' Maritime Law, 381.)

2d. It is further settled that, under an insurance free from particular average, the insured are not liable, if it is in the power of the insurers to bring any portion of the goods in specie to the port of destination, no matter how worthless they may be, or what may be the expense of transportation. (*De Peyster* v. *Sun Ins. Co.*, 19 N. Y., 272; *Saltus* v. *Ocean Ins. Co.*, 14 Johns., 138; *Neilson* v. *Columbian Ins. Co.*, 3 Caines, 108; *Maggrath* v. *Church*, 1 Caines, 196; *Leroy* v. *Gouverneur*, 1 Johns. Cas., 226, *Cocking* v. *Fraser*, Park Ins., 114; 4 Doug., 295.) In several of these cases the expense of transportation would have exceeded the value of the goods, yet it was held that the insured could not recover. This was particularly the case in *Maggrath* v. *Church* (1 Caines, 196); *Cocking* v. *Fraser* (Park Ins., 114; 4 Doug., 295); see also *De Peyster* v. *Sun Ins. Co.* (19 N. Y., 272). The same rule has been applied to freight policies; and it

is held that under an insurance against total loss only, the the insured cannot recover, if the freight could have been earned by him, even though the cost of earning it exceeded its total amount. (*Ogden* v. *Gen. Mut. Ins. Co.*, 2 Duer, 204.) The case of *Bryan* v. *N. Y. Ins. Co.* (25 Wend., 617), which was cited against us below, is not an adverse authority. There, 1,970 barrels of corn being wrecked on the coast, the commissioners of wrecks sold the chances of recovering them to various parties, some of whom recovered twenty-seven barrels. This, of course, was a total loss, as the court held. The insured lost every barrel of corn. The twenty-seven that were recovered never went to his benefit. He could not make the slightest claim upon them. Whether lost by the action of the sea or by the superior force of legal officers, or by theft, was immaterial. All was lost to him. But in the present case all that was saved was applied to the plaintiffs' benefit. The English decisions, of later date than *Cocking* v. *Fraser*, are not authority upon this question in this State. The English courts have adopted a doctrine inconsistent with that case, and have finally reached the conclusion that an insurance free of particular average covers a constructive total loss. (*Adams* v. *Mackenzie*, 13 C. B., N. S., 442.) The decisions in this State are directly adverse to this doctrine, and the English decisions have been expressly overruled. (*Saltus* v. *Ocean Ins. Co.*, 14 Johns., 138.)

3d. It is also settled that where an invoice of merchandise, insured in one lot, is put up in separate packages, the loss of one or more of such packages is to be deemed a partial loss of the whole shipment, and not a total loss of the particular packages; and, consequently, that an insurance free from particular average does not cover such a loss. (*Wadsworth* v. *Pacific Ins. Co.*, 4 Wend., 33; *Bias* v. *Chesapeake Ins. Co.*, 7 Cranch, 415; *Ralli* v. *Janson*, 6 Ellis & B., 422; *Humphreys* v. *Union Ins. Co.*, 3 Mason, 429; *Newlin* v. *Ins. Co.*, 20 Penn. St., 312; *Waln* v. *Thompson*, 9 Serg. & R., 115; *Ins. Co.* v. *Bland*, 9 Dana, 148; *Brooke* v. *Louisiana Ins. Co.*, 5 Martin, N. S., 530.) The decisions referred to

may be classified with respect to the particular facts of each case as follows: The decision being in every case that the insured could not recover under a policy free from particular average. 1. Total loss of a large number of hides out of a cargo thereof. (*Wadsworth* v. *Pacific Ins. Co.*, 4 Wend., 33; *Bias* v. *Chesapeake Ins. Co.*, 7 Cranch, 415.) 2. Total loss of thirty-five mules out of seventy-four. (*Brooke* v. *Louisiana Ins. Co.*, 5 Martin, N. S., 530.) 3. Total loss of 1,023 bags of linseed out of 2,183 insured. (*Ralli* v. *Janson*, 6 E. & B., 422, Exchequer Chamber.) 4. Total loss of four bales of cotton out of 104 insured, and valued in the policy at fifty dollars a bale. (*Newlin* v. *Ins. Co.*, 20 Penn. St., 312.) The rule was until recently supposed to have been otherwise settled in England by *Davy* v. *Milford* (15 East, 559). But that case has been overruled and the American decisions followed. (*Ralli* v. *Janson*, 6 Ellis & B., 422.)

4th. The insurance in this case was absolutely free from particular average. The policy explicitly covers "merchandise free from particular average only." The words in the general part of the policy, upon which the plaintiffs rely, insuring against damage to the merchandise, "or any part thereof," do not alter the case in the least. These words are printed in the policy, while the words "free from particular average" were written. The latter words, therefore, control and supersede the former, being inconsistent with them. (*Harper* v. *N. Y. City. Ins. Co.*, 22 N. Y., 444; *Harper* v. *Albany Ins. Co.*, 17 N. Y., 198; *Woodruff* v. *Commercial Ins. Co.*, 2 Hilt., 122; *Robertson* v. *French*, 4 East, 130.) The two clauses are irreconcilable. The clause insuring "any part" of the goods would cover any partial loss. The clause excepting particular average losses was inserted on purpose to nullify the printed clause. Precisely the same clause was in every policy under which the question constituting the main issue in this case has arisen. It has been in every marine policy for at least 150 years past. (See form in Hopkins' Marine Ins., 118.) The point now raised by the plaintiffs' counsel, as if it were a new and pecu-

liar one, has therefore been overruled in all the American decisions and unnoticed in the English cases. On policies just like this, all the decisions which we have cited were made.

5th. It was clearly within the power of the plaintiffs to have brought a considerable portion of the coffee to the port of destination, New York. The coffee lay in the ship, accessible to every one. The wreckers had no difficulty in getting at it, and the plaintiffs could have got it out and forwarded it to New York if they had wanted to. It was of no consequence that the ship was wrecked at a place where there was at the time no other vessel. A vessel afterward came down, and her master was willing to take the coffee on board. The fact that the freight would have cost more than the value of the coffee is immaterial. That was the fact in several of the cases cited under our second point.

6th. Nearly one-fourth of this coffee was in fact brought to its port of destination. It arrived there in specie, in perfect kernels, recognizable by every one as coffee, though its quality was spoiled. It was quite immaterial by whom the coffee was brought in, so long as it was brought. Its arrival at port brings the case within the rules of law already stated. Even if, as the plaintiffs claim, the coffee was brought to New York by the defendant to prevent the loss from being total, that is immaterial. The policy expressly authorizes the insurers to recover and save the property insured, without thereby accepting an abandonment. No one would dispute the right of insurers to save property in an uninjured state, no matter how anxious the insured might be that it should be lost; and no one would have a right to inquire what was the expense of the operation. In some cases of enormous valuations it might be for the interest of the insurers to rescue property at an expense greater than its real value. Of this the insured could not complain, because he would receive all that the insurance was intended to secure to him, viz., his property. And for the same reason he cannot complain if, having only paid for insurance against a total

loss, the insurers recover for him a part of the thing insured in specie. He gets all he bargained for.

7th. The evidence being all one way upon every material issue, there was nothing for the jury to pass upon, and the defendant's exception to the refusal of the judge to dismiss the complaint was well taken. The plaintiffs having waived all claim for general average, the judge ought to have dismissed the complaint. He had no right to leave the jury to decide upon undisputed facts. (*Noakes* v. *People*, 25 N. Y., 380; *White* v. *Stillman*, id., 541; *Storey* v. *Brennan*, 15 N. Y., 524; *Carpenter* v. *Smith*, 10 Barb., 663.)

HUNT, C. The recovery was for the value of the coffee only. The insurer of the wool and the coffee is liable for a total loss of either the wool or the coffee. Each is deemed the subject of a distinct insurance under the clauses in question. (*Biays* v. *Chesapeake Ins. Co.*, 7 Cranch, 418; *Wadsworth* v. *Pacific Ins. Co.*, 4 Wend, 40.) There is but a single question in this case: Was there a total loss of the coffee?

The policy was a continuous one. It insured the merchandise from ports in Europe to New York "*free of particular average only.*" Under this clause, in the case of a single article, the insurers are liable only in the event of a total loss of the article insured. The shippers insist that the facts found establish a total loss of the coffee. The insurers insist that the loss is partial only. The question is, therefore, was there a total loss of the coffee insured? More particularly still, the question may be thus stated: The ship is stranded, becomes a wreck, and is submerged in the sand. The tide at its full goes over her main deck and her cargo is submerged. The master, in good faith, abandons the vessel and cargo as a total loss, while in this condition and in good time, and the owners give notice to the insurers. The latter refuse to accept the abandonment, employ a wrecking company, who, after some months' of labor, recover from the vessel some wool and some coffee, the vessel and the body of the cargo never being saved.

The wool, upon sale, produces $1,100 more than the expenses of its recovery, and the coffee $2.44 more than the expenses of its recovery.

Is this a total loss of the coffee? Must there be a *total physical loss* of the subject of the insurance, or is a total loss to the owner sufficient?

In the English practice, a ship is a total loss when she has sustained such extensive damage that it would not be reasonably practicable to repair her. The ordinary measure of prudence which the courts have adopted, is this: If the ship when repaired will not be worth the sum which it would be necessary to expend upon her, the repairs are, practically speaking, impossible, and it is a case of total loss. (*Moss* v. *Smith*, 9 Man. Gr., and Scott, 103; *Irving* v. *Mantang*, 1 id., 176, 304; *Roselle* v. *Gurney*, 11 Com. B., 2 J. Scott, 186, 187; *Granger* v. *Martin*, 2 Best & Smith, 467, 468; *Adams* v. *McKenzie*, 13 C. B., N. S., 442; 2 Parsons, *infra*.)

The American rule recognizes the same principle, but fixes upon a different amount of expense as giving the right to abandon. If the expenses of repair will exceed half the value of the ship when repaired, she is considered a total loss, according to the American authorities, and may be abandoned. See all the cases collected in 2 Parsons on Marine Insurance, edition of 1868, 125, 126.

On the occurrence of a stranding like that in question, resulting in permanent destruction, the voyage is lost by a peril insured against, and the master of the vessel thereupon becomes the agent of the cargo owners as well as of the owners of the vessel, and must act as the facts of the case require. These facts and his abandonment, create a total loss, and the subsequent recovery of the vessel, or of a portion of the goods by extraordinary exertions, does not alter this result. This is salvage service merely, and does not create a general average, nor does it entitle the ship-owners to freight. (*Dunnett* v. *Tomaghen*, 3 John. R., 156; *Heylzin* v. *Firemans' Ins. Co.*, 11 id., 85; *Bryan* v. *Maitland*, 25 Wend., 618; 2 Pars., *sup.*, 78, 79; Story on Agency, § 118.)

In cases like the present, the chief question has been, whether there must be an actual total physical loss of the thing insured, or whether there may be a constructive total loss; whether there must be demolition and annihilation, or whether a destruction of all value to the owner, and hence a total loss to him is sufficient. The current of authorities, both in this country and in England, as well as the conclusion of elementary writers, is in favor of the doctrine of constructive loss. The authorities are so distinct and so numerous, that I will content myself with simply referring to them without comment. Especially is this the rule where the voyage is broken up by the destruction of the vessel. · American authorities: (*Lemont* v. *Lord*, 52 Maine, 393, etc.; *Poole* v. *Protect. Ins. Co.*, 14 Conn., 47; *Bryan* v. *N. Y. Ins. Co.*, 25 Wend., 618; *Buchanan* v. *Ocean Ins, Co.*, 6 Cowen R., 318; *De Peyster* v. *Sun Mutual Ins. Co.*, 19 N. Y. R., 272.) English cases: (*Burnett* v. *Kennyton*, 4 T. R., 210, 222; *Dyson* v. *Roncroft*, 3 Bos. & P., 474; *Cologan* v. *London Ass. Co.*, 5 M. & S., 447; *Roux* v. *Salvader*, 3 Bingh. N. C., 266; S. C., 4 Scott, 1; *Adams* v. *McKenzie*, 13 J. Scott, C. B., N. S., 442; *Moss* v. *Smith*, 3 Man. & Gr., 103; *Rosette* v. *Gurney*, 11 C. B., 2 J. Scott., 186; *Granger* v. *Martin*, 2 Best & Smith, 467.) Elementary authorities: (2 Parsons on Marine Insurance, 68, etc.; Marshal on Insurance, 5th ed., 603, Shee's note; Phillips on Insurance, 5th ed., 437, n. 3; Park on Insurance, 6th ed., 151, 155; 2 Arnould on Insurance, *1022.)

The same principles which prevail as to a total loss of the ship, apply to the total loss of the cargo, with the difference which is made necessary by the difference in the nature of. the property. (2 Par., *sup.*, 93.)

I will now refer more particularly to those cases on which the court below based its opinion in reaching a contrary result, as well as those cited by the counsel sustaining their judgment in the argument before us. The cases cited by the court below are those of *Magrath* v. *Church* and *De Peyster* v. *Sun Mut. Ins. Co.*, the last of which is cited by me to

sustain the contrary doctrine. In addition to these cases, there are cited by the counsel for the respondents *Mason* v. *U. S. Ins. Co.* (1 Wheat., 219); *Skinner* v. *Western Ins. Co.* (19 La. R., 273); 2 Par. Mar. Law, 381; *Saltus* v. *Ocean Ins. Co.* (14 I. R., 138); *Neilson* v. *Col. Ins. Co.* (3 Cai., 108); *Long* v. *Gorman* (1 John. Cas., 226); *Cocking* v. *Fraser*, (Doug., 295).

The case of *Cocking* v. *Fraser* is discussed in all the elementary works, and in many of the reported cases. It is said that it never was an authority on the point in question. (Park. on Ins., 6th ed., 151, 155.) It is hardly necessary to discuss that point. Conceding it to have been authority, it has been expressly overruled. Mr. Arnould says (2 Arnould Ins., 1022): "It seems better to consider this case as overruled in English law, than to endeavor to support it on its facts." This case was decided by Lord MANSFIELD in 1784 or 1785. Lord KENYON dissented from this ruling in *Barnett* v. *Kennington* (7 T. R., 210, 222), in 1797. Lord ALMESLY overruled it in 1803, in *Dyson* v. *Roncroft* (3 B. & P., 474), although he makes some effort to reconcile the cases. In 1816 Lord ELLENBURGH overruled it, in *Cologan* v. *London Ass. Co.* (5 M. & S., 447). In 1835 the case of *Roux* v. *Salvador*, in the Court of Exchequer Chamber, again overruled its principles. (3 Bing. N. C., 526; S. C., 4 Scott, 1. See 2 Par. on Mar. Ins., 97, 98, etc.)

The first, in time, of the cases cited from the reports of this State, is that of *Le Roy* v. *Gouverneur* (1 John. Cas., 226). That was on a policy "free from average under seven per cent unless general," upon a cargo of corn and stores, on a voyage from New York to Madeira. The vessel having met with foul weather, put into Newcastle, on the Delaware; but being unable to obtain aid, proceeded thence to Philadelphia. The case states that "on unloading her cargo all the corn was found to be so much damaged as to be unmerchantable and unfit to be reshipped; that a considerable quantity of the lumber had been thrown overboard during the storm." In a *per curiam* opinion it was held that the plaintiff could recover a propor-

tion for the general average occasioned by the jettison, but not a total loss. It is to be observed that all the corn was there in kind and specie. There was no destruction or change of character. It was not merchantable, simply; that is, it was not equal to the average of its class; not fit for sale at the market price of the uninjured article. It was "not suitable to be reshipped;" that is, it was not corn of a character and quality suitable for shipment to Madeira. So, again, as was said by Mr. HARPER, in *Moreau* v. *U. S. Ins. Co.* (1 Wheat., 219), there never was an abandonment while the peril of total loss existed, and the right cannot be exercised after that peril is passed. The notice of abandonment must be given while the whole is in peril, and in a reasonable time. (*Andrews* v. *Royal Ex. Ass. Co.*, 7 East, 38; *Davis* v. *Milford*, 15 East, 565.)

*Magruth* v. *Church* (1 Cai. R., 196) was the same case between different parties; and it appears in that report of the case that the actual value of the insured articles was $924, in addition to all the expenses and charges connected with its preservation. The opinion was delivered by KENT, J. He held, as the court had before held, that the plaintiff could not recover as for a total loss. It is not to be denied that his observations in the course of his decision give countenance to the case of *Cocking* v. *Fraser*. They are, however, quite aside from the actual point of his decision upon the facts before him. This authority is subject to the remarks made upon the preceding case. *Neilson* v. *Columbian Ins. Co.* (3 Cai., 108), was also an insurance upon corn from New York to Madeira. The jury found a verdict for a total loss, which the Supreme Court set aside. Without going further, it is sufficient to note the facts. 1. The voyage was not destroyed. 2. There was substantial value preserved ($400). 3. The injury to the corn was from a peril not insured against. The statement in the case does not show that the vessel shipped any water. A portion of the corn was thrown overboard and the vessel came to on the north side of the island, a southerly wind preventing her going to Funchal, on the south side.

Being alarmed by pirates, she stood away for the Cape de Verds, and in nine or ten days reached Bonavista, "when, upon opening the hatches, the corn was found so damaged and offensive that it was forbidden to be landed, but was sold as it lay on board for about $400." She then sailed for Brazos, reached St. Vincent, another of the Cape de Verds, and after repair sailed to Lisbon. No claim against the underwriter was ever made on her. 4. The right to abandon was not exercised, while the peril of total loss existed.

In *Saltus* v. *Ocean Ins. Co.* (14 John. R., 138), the action was to recover for the loss of a cargo of corn shipped to Lisbon. It is to be observed of that case, that there was no loss of the voyage. "The vessel was fully repaired and in a state to proceed to sea, but did not prosecute this or any other voyage." The cargo was materially injured, and was not in a state to be transported, but was yet of substantial value. No abandonment was claimed, while a peril of total loss remained. It is conceded, however, that the principle of *Cocking* v. *Fraser* was supposed by the court to control the case.

The reference to Parsons on Marine Law, is to a passage where a discussion is had of the cases already discussed by me.

*Moreau* v. *The United States Insurance Company* (1 Wheaton, 219), is also one of the cases cited by the respondent's counsel, and is apparently an authority in his behalf. The court decide, in general terms, that the loss cannot be said to be total, if the property arrive at the port of discharge, reduced in value or quality to any amount. The learned judge says: "If the loss be total in reality, or such as the insured is permitted to treat as such, he is entitled to abandon and recover as for a total loss in the case of memorandum articles, but always with this exception, that he is not permitted to turn a partial into a total loss. Keeping this distinction in view, the loss of the voyage by capture, shipwreck or otherwise, may be treated as a total loss." This, he says, is the doctrine of *Dyson* v. *Roncroft* (*supra*). The true point of the decision is found in the argument of Mr. Harper, of counsel for the insurance company. He says at p. 122: "The

right of abandonment exists while the peril of total loss exists, but when the article is saved from that peril, the right no longer exists. The right of abandonment was not exercised in due time, not until after the peril had ceased." (See 7 and 15 East., *supra*.)

The case of *De Peyster* v. *The Sun Mutual Ins. Co.* (19 N. Y. R., 272), has been cited by me as sustaining the right to recover in this case. It is also one of the cases relied upon by the defendant, to sustain the judgment of the court below. The case was this: A cargo of hides on board a vessel sailing from the Spanish main to New York, was insured, free from average unless general. The vessel sprung a leak, was obliged to throw overboard a portion of the hides; the rest were saturated with water, became putrid, and emitted a stench dangerous to health and life. Making Havana as a port of distress, the hides were found to be entirely damaged. Such of them as were not putrid were directed by the authorities to be sold, the residue were thrown into the sea. Some of the damaged hides were purchased by an American shipper, who sent them to Boston, where they arrived damaged and worn, and were sold at a loss of forty-five per cent. The defendant asked the judge to charge that the plaintiff could not recover for a total loss because a portion of the property remained in specie, and was of some value after the disaster, and after the arrival in Havana. This was refused. The plaintiff recovered, and the Court of Appeals (in 19 N. Y., *supra*) sustained the verdict.

In the case before us, the stranding of the vessel was, within all the authorities, of such a character as to create a total loss. She was ashore on the most perilous part of the Atlantic coast, in the depth of winter, her main deck submerged, and was incapable of restoration. (2 Par. Mar. Ins., *supra*.) While thus exposed to the peril of a total loss, the master abandons the vessel, and notice is given to the underwriter. The underwriter employs a wrecker at a great expense to visit the vessel, who, after a labor of some months, is able to recover a small portion of the cargo, among the rest, some

bales of the wool, and portions of the coffee, so damaged as to be worthless. The jury have found that this effort to recover the cargo, was a contrivance simply to convert into a partial, what would otherwise be a total loss. In my view of the case, the loss of the coffee was total, and the right to recover became fixed, when the abandonment was made. The rescue of a portion of the contents of the vessel, with whatever motive it was done, did not undo what was already done. It could not convert into a partial loss, that which under the circumstances detailed, the law adjudged to be total. It need not be denied, that many of the New York cases give countenance to the doctrine contended for by the respondent. I have endeavored to show that they may be sustained without sustaining that doctrine. The rule as established by the recent English cases, and the cases in Maine and Connecticut, and as laid down by the elementary authors cited, is, in my judgment, the true rule, and should be so declared by this court.

The order of the General Term should be reversed with costs, and judgment ordered to be entered upon the verdict with costs.

All concur. The order of the General Term reversed, and judgment ordered for the plaintiffs upon the verdict with costs.