By the Court.—Sedgwick, Ch. J.
The cargo on board of the canal boat was in bulk, and amounted in quantity to 1650 barrels of potatoes. The boat was moored to the dock, before any loss happened. Before the loss, 109 barrels of potatoes were safely landed, and there remained on board 1541 barrels. The insurance was until the “said goods and merchandise shall be safely landed.”
The policy contained the usual clause that the assurers were to take upon themselves all perils and losses that might accrue “to the said goods and merchandise or any part thereof.”
*269 The plaintiff claims for the loss of the 1541 barrels of potatoes. Beyond doubt this is a claim for the loss of a part of the subject that was insured in the beginning, viz., “of the whole cargo.”
The memorandum clause specifically provides that, among other articles named, “ potatoes and roots ” are warranted by the assured “free from average, unless general.” And certain letters were written on the indorsement of this cargo on the policy, which was an open policy. It is agreed that these letters mean “free from particular average.” It is thén the simple and often-determined case of insurer not being liable for a partial loss, provided that the true meaning of the policy is, that the insurers are not liable, unless the whole of the subject insured at the beginning of the suit, that is, the whole cargo, be lost.
The learned counsel for the respondent, however, urges, that the policy makes the subject of insurance not only the whole, as such, of the cargo, but also each part of the whole, in the words that the assurers take upon themselves all perils to the goods or any part thereof; that the insurance continued in force, until the cargo was safely landed ; that when the 109 barrels were safely landed, they went out of the contract and the policy continued as to the 1541 barrels on board ; that these 1541 barrels were the whole subject of the contract and that if a total loss as to them was shown, the plaintiff was entitled to recover. In other words, that the policy intended to provide that what was a part of the cargo in the first place, might become the whole of the subject insured when the other part had been safely landed and so discharged from the contract. Of course, this whole is separable into parts, and the result would be that whatever of that was taken from it and safely landed, could always be considered as discharged from the contract, and the insurers would have no protection from the memoran *270 dum. The argument is not valid, even if other considerations be not fatal to the claim, if the part safely-landed has not been separated from that on board but, in fact, the contract operates upon them taken together as a whole.
On this point, there is authority in this State which, must be followed. The decision in Gardiner v. Smith (1 Johns. Cas. 142) has been questioned, in my judgment not properly, by courts of other States and by learned text-book writers. It has not been overruled in, this State. The policy of insurance was “to any port in Jamaica, and twenty-four hours after the goods are-landed in Jamaica,” and was against risk of contraband and illicit trade. After arrival at the port of discharge, part of the goods were landed, and after they had been on shore more than twenty-four hours, were seized for illicit trading. One question was, whether these goods were protected by the policy, after the lapse of the twenty-four hours. The court held, “a protection against the risk of seizure, until they should be so-landed, was a direct and important stipulation in the contract, and the insurance being entire, we are of opinion that the risk continued on the entire goods, until twenty-four hours after all of them had been landed.”
In American Insurance Co. v. Griswold (14 Wend. 478), it was necessary to allude to what right.of apportionment or contribution the underwriter had in a. case where insurance was made for less than the value of the goods insured, and where, after arriving at the-port of discharge, some had been landed, and those remaining on board were of not greater value than the amount of insurance. Chancellor Kent cited Gardiner -o. Smith, in saying that in such a case there was to bean apportionment between the underwriter and the assured. “ Where the insurance is upon a single voyage, from one port to another, upon an entire cargo or lot of *271 goods, to be laden on the vessel at the port of departure, and when a part of the goods have arrived at the port of discharge, and have been safely landed before the loss occurs,” i. e. the goods, actually landed are within the policy, and bear a proportion of the loss made on the goods not landed.
In the same case Senator Tracy used the principle of' Gardiner v. Smith, citing it, and said (p. 489), “ noiy, if instead of a seizure of all the goods, there had been a seizure of those only that were, or of those only that were not landed, it is plain on the principle of that decision, that it would have been but a partial loss, and the interests on all the goods must have contributed ratably.” He also said, “ as in the common case of insurance on goods from one port to another and until safely landed, where, after a part of the goods are-landed, the residue on board are lost; this is frequently denominated a total loss, though it is really a partial loss, because the goods landed were not, until the goods were all landed, withdrawn from all the risks-against which they were insured, although they were withdrawn from the particular risk, by which the loss occurred ; and therefore, as the insurer would have to-contribute in ease of their loss, notwithstanding they were landed, it is only reasonable and just that the owner should contribute on account of those on board,, the same as though the loss had occurred, before any were landed.”
It follows, then, in this case, that, as the 109 barrels-safely landed were within the policy, and would be, until the whole cargo was landed, and were not themselves lost, there was but a partial loss, and the plaintiff' should not have recovered.
The same result follows from the view just suggested. The form of the policy is prepared in advance, for a business of taking different kinds of risks, and is-meant to contain clauses that may be distributively *272 used for different classes and conditions of merchandise or goods to be insured, as they will be severally presented for insurance. The general clause, describing what risks are undertaken, is meant to be applied to such goods in general, as to which it is not intended to limit the insured to a total loss, and the thing insured is stated to be “said goods and merchandise, or any part thereof.” But the memorandum clause is meant to make a reservation in case “ the said goods and merchandise ” are of such a kind that the underwriters do not intend to pay for a partial loss of them ; that is, if they are “potatoes or roots,” then the insured must bear any partial loss. The written words to the same effect have a more direct application, because they were placed on the policy contemporaneously with the cargo being entered on it. The insurance, then, is in substance, if the perils of the sea prevent any part of the cargo being landed, the insurers pay the value of the whole cargo; but if any part is safely landed, the insured is to bear the loss of the other part and the insurer is to pay nothing. There is no way of severing the contract, because the thing said to lead to the severing, is the contingency which satisfies the whole of the obligation of the insurer.
What has now been decided, determines the case as it is, and it may be unnecessary to pass upon other parts of the appeal. In view of a former appeal having been determined upon the other branches,* it may not be inexpedient to express the opinion, that the facts do not show a total loss, within the rule that if the cost of forwarding memorandum articles from the place of disaster exceed their value, the loss will be deemed total, or within the case of Wallerstein v. Columbia Ins. Co. (44 N. Y. 204). Leaving on one side the safety of the 109 barrels, there was not a total loss of the 1541 barrels.
*273 It is not the purpose to decide that the rule referred to is to be applied here, but to consider it as the most favorable that can be invoked for the plaintiff. In addition to the 109 barrels referred to there were at least 80 barrels, landed after the disaster. This was sufficient to make the loss partial, unless, where the rule is properly applied, the cost of transporting them to a safe landing was as great as their value. It is manifest that the rule must be confined to the expense of taking them from the boat and in safely landing them, and not extended to expenses that would be incurred if no disaster had happened. The expenses were said to be $3.65 greater than their value. To reach this result, the following sums were charged, which were not to be attributed to transporting the potatoes to shore or in safely landing them. The first was rent of a store on land for one month, $30 ; commissions and delivering on 80 barrels, $30; use of two stores, $10; lawyer drawing paper, $75; dispatches, $2; to Sew York twice —car fare and time, $5. If these are deducted, it appears that the 80 barrels of potatoes were in value at least $60 and over. There was, therefore, not a total loss.
The case made does not show the happening of a total loss, within the case of Wallerstein, so far as that case requires the existence of a total loss, irrespective of those ambiguous considerations, which pertain to what is there called a constructive total loss.
Judgment reversed, with costs of appeal to appellant to abide event, and new trial ordered. Order appealed from reversed, with $10 costs.
Freedman and Russell, JJ., concurred.

 46 Super. Ct. 118.