### DEVITT v. PROVIDENCE WASHINGTON INS. CO.

(Supreme Court, Appellate Division, Second Department. May 31, 1901.)

1. INSURANCE—POLICY—CONSTRUCTION—TOTAL LOSS.

Where a cargo of produce on a canal boat insured "free of any claim for damages or partial loss" was so damaged that the gross proceeds of the sale of the portion saved equaled only one-fourth of the value when insured, the loss was a constructive total loss, for which the insurer was liable.

2. SAME—DAMAGE—PROXIMATE CAUSE—ICE.

Where a canal boat, on which was a cargo of produce insured under a policy providing that it did not cover any damage from ice, was sunk by striking a hidden obstruction, and before the boat was raised and repaired the cargo was partially frozen, and, because of the delay caused by the injury, could not complete its voyage before the canal was closed by ice, the proximate cause of the loss was the sinking of the boat, the freezing of the cargo being a mere incident, and the insurer was liable.

3. SAME.

The phrases "free of particular average" and "free of any claim for damage or partial loss," in a policy of insurance of a cargo of produce on a canal boat, have the same meaning,—that the underwriter is liable only for a total loss.

4. SAME—COURTS—CONFLICT OF DECISIONS.

Where the highest court of a state has decided that, where insured property is so damaged that the cost of repairing will equal the value when repaired, there is a total loss, within the meaning of a policy, "free of any claim for damage or partial loss," in determining rights under a policy issued in such state to a citizen thereof its courts should follow such decisions, though the supreme court of the United States has adopted a contrary construction.

Appeal from trial term, Westchester county.

Action by John J. Devitt against the Providence Washington Insurance Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

La Roy S. Gove, for appellant.
Ralph Earl Prime, Jr., for respondent.

GOODRICH, P. J. The defendant, at New York City, on November 21, 1898, issued to the plaintiff a certificate of insurance under an open policy "in the sum of four thousand dollars, on general produce. Free of any claim for damage or partial loss. Valued at ———— on board the canal bt. W. C. Rodgers, at and from Brockport and intermediate ports to Yonkers, N. Y. Loss, if any, payable to John J. Devitt." The certificate covered a cargo of potatoes, onions, and apples, owned by the plaintiff, and valued at $3,811, which had been loaded upon the boat at Brockport, consigned to the plaintiff at Yonkers. A large portion of the cargo consisted of potatoes. These were not in barrels, but were stowed in bulk on the canal boat. On November 23d, while on her voyage through the Erie Canal between these places, the boat was sunk at Oriskany by striking a hidden obstruction. Boat and cargo were nearly submerged. The defendant was promptly notified of the disaster, took possession of the cargo, and, after considerable effort, raised the boat, and placed it in a dry dock for repairs, the cargo remaining in the vessel. The weather was so cold that ice formed inside and outside of the boat, and the cargo was more or less frozen. After repairs to the boat, it continued its voyage until it reached St. Johnsville, a few miles east of Oriskany, where the boat was completely frozen in. The defendant removed a part of the cargo, and forwarded it in bad condition to the plaintiff at Yonkers, where it was found to be unmerchantable. In its efforts to save the cargo the defendant expended $1,186.50. The cargo was sold for $960.26. The expenses were $797.38, the net proceeds amounting to $162.98. The total expenses were $1,983.88, more than twice the amount of the gross proceeds of the sale. The action was tried by the court without a jury, and the plaintiff recovered a judgment, from which the defendant appeals.

The certificate contained the phrase, "Free of any claim for damage or partial loss," and the policy contained a memorandum clause, "But fruit and vegetables, and other articles perishable in their own nature, are free of particular average," and the following clauses: "This policy does not cover any damage from ice, and, if the voyage is suspended or interrupted, in consequence of ice, for three consecutive days, or more, the trip shall cease and terminate, at and from 12 o'clock noon of the day the boat is stopped by ice." "It is understood that there can be no abandonment of the subject insured." "The said loss or damage to be estimated according to the true and actual cash value of the said property at the place of destination on the day of the disaster; and on the property not forwarded to its des-

tination the said loss or damage to be ascertained in the same manner." It must be assumed, also, that the defendant, in taking possession of the cargo at Oriskany, waived no rights, as this was done under the provision of the policy, "nor shall the acts of the insurers or their agents in recovering, saving, or disposing of the property hereby insured be considered as    *    *    *    affirming or denying any liability under this policy; but such acts shall be considered as done for the benefit of all concerned, without prejudice to the rights of either party." It appears by the evidence that, while the vegetables were not physically lost or destroyed,—that is, while the larger portion remained in specie,—some of them were unfit for use, and when those which were forwarded arrived at Yonkers they were unmerchantable. It further appears that when the potatoes were unloaded from the canal boat they had become damaged to such an extent that it was not considered practicable to pick out from the mass those which were fit for use. As it had been proved that the original value of the cargo was $3,811, and the gross proceeds of the portion saved and sold only $960.26, the court was justified in finding that the loss was a constructive total loss. In view of this fact, it is not necessary to scrutinize the expenses connected with the sale, to see whether they were properly made for salvage account. The loss occurred at Oriskany, and was not affected by the ice clause of the policy. That clause related to damage occasioned by reason of interruption of the voyage by ice forming in the canal or elsewhere on the voyage, not to damage from ice which might form upon the cargo after it sank. The proximate cause of the loss was the sinking of the boat and cargo. The formation of ice upon the cargo, and the freezing of a part of the cargo, were incident to the submergence of the boat; but the loss was the immediate result of one of the "perils of the canals and rivers," covered by the terms of the policy. We must not lose sight of the familiar rule that in cases of ambiguity or doubt a policy should receive the strictest rule of construction against the underwriter, that effect should be given to any clause exempting him from liability only where the case falls clearly within the exception, and that the doubt should be resolved against the company. Allen v. Insurance Co., 85 N. Y. 473; Kratzenstein v. Assurance Co., 116 N. Y. 54, 22 N. E. 221, 5 L. R. A. 799; Rickerson v. Insurance Co., 149 N. Y. 307, 43 N. E. 856. In the last case the court cites with approval similar language of Mr. May in his work on Insurance (section 175). The policy was an open one, and, consequently, general in its language. The certificate, having been specially issued to the plaintiff, contains the terms of his contract, and will control the general language of the policy, if there be any difference in the meaning of the terms used in the certificate which may inure to his benefit. But I cannot discover any difference in the meaning of the terms "free of particular average," used in the body of the policy, and "free of any claim for damage or partial loss," used in the certificate. These two phrases have the same meaning,—that the underwriter is liable only for a total loss.

The policy contained a provision that "there can be no abandonment of the subject insured." Hence the plaintiff was not bound to give notice of abandonment in order to constitute a constructive

total loss, and the case must be considered without reference to such notice, or as if no notice were essential to convert a constructive total loss into an actual total loss. In other words, it was the intention of the parties to eliminate the necessity of notice of abandonment in all cases of loss or damage. There was no necessity for notice of abandonment, because notice had been dispensed with. Therefore we must construe the policy upon the theory that notice of abandonment was not necessary to constitute a constructive total loss. In McLain v. Insurance Co. (Sup.) 38 N. Y. Supp. 77, where the policy provided that the insured should not have the right to abandon the vessel except in case of absolute total loss, it was held that this provision, if enforced, would leave the insured remediless. The court, Daly, P. J., writing, said (page 79):

"It is conceded that the present is a case of constructive total loss, and, if there can be no abandonment, there can never be a loss absolute, and the policy never becomes enforceable. A construction of any of the terms of a contract of insurance which defeats its whole object is not to be allowed."

The controversy must turn upon the question whether the loss is partial, total, or constructively total. A constructive total loss is one where, although the loss is not actually total, it is of such a character that the assured, if he thinks fit, is entitled to treat it as a total loss by abandonment. This he may do where the damage exceeds a moiety of the cargo. Insurance Co. of North America v. Canada Sugar-Refining Co., 58 U. S. App. 22, 31 C. C. A. 65, 87 Fed. 491. In that case the court, Wallace, C. J., writing, said:

"By the later authorities it is settled that under a policy insuring a ship or cargo against 'total loss' only the insured is entitled to recover upon proof of a constructive total loss."

The same doctrine was stated in Marcardier v. Insurance Co., 8 Cranch, 39, 3 L. Ed. 481. In Wright v. Williams, 20 Hun, 320, the general term of the First department, Barrett, J., writing, said (page 324):

"It is undoubtedly the general rule in insurance free of particular average that the underwriter is only liable for a total loss. This is not necessarily a total loss in specie, but of value. There may either be an actual or a constructive total loss. In the former case the thing insured is physically destroyed; substantially so, at least. In the latter, the material form may exist, but the value to the owner is gone. The rule, then, is that, if the expenses of repair will exceed half the value of the ship when repaired, there is a constructive total loss, and she may be abandoned. Due and formal notice of the latter act then becomes essential. Arn. Ins. 844; 2 Pars. Ins. (Ed. 1868) 125, 126; 2 Phillips (4th Ed.) 274, § 1535; Marsh. Ins. (5th Eng. Ed.) 440."

In construing any contract it is usually important to scrutinize the surrounding circumstances, and to have regard to the object sought to be subserved. The vegetables shipped by the plaintiff in the canal boat constituted the entire shipment, and the sole subject of the insurance. The contemplated voyage covered by the insurance was confined to inland and shallow waters. The policy is headed with the words "Trip Canal Cargo." The vessel is named in the certificate, and is described as a canal boat. The cargo consisted principally of 6,800 bushels of potatoes. Perils from jettison, theft,

robbery, barratry, and many other causes ordinarily insured against are altogether excepted by the terms of this policy. The voyage was defined "at and from Brockport and intermediate ports to Yonkers, N. Y." It was practically impossible for the boat, in the prosecution of this voyage, to reach foreign seas or foreign territory, or to traverse deep waters. It was practically impossible that during the prosecution of this voyage the entire cargo should be irretrievably lost in specie by the only perils insured against in the policy. It is almost inconceivable that such a result could be brought about in these shallow waters, either by fire, or by a wreck or a foundering of the boat. If the boat had been destroyed by fire, or sunk in the middle of the Hudson river, the merchantable value of the cargo might have been entirely lost; but it is hardly supposable that expert wreckers could not have recovered some portion of a cargo of nearly 7,000 bushels of potatoes. The voyage at every point was easily accessible to the representatives of the underwriters. On the occasion of any accident covered by this insurance it is hardly supposable that the underwriters would not have been able to recover many of these potatoes, and forward them, while still potatoes, to the consignee. It must be assumed that the insurance company acted in good faith in accepting the premium and in delivering this certificate of insurance. If the policy is inoperative in the case at bar on the ground that some portion of the cargo was ultimately delivered to the consignee in specie, then, under the same doctrine, we find it difficult to conceive of any probable contingency under which the assured could successfully claim a recovery. The distinctions between an actual and a constructive total loss laid down in the law of insurance may not be satisfactory or altogether pertinent when applied to an inland marine policy covering a voyage by a canal boat in the terms of the policy before us. In the United States a somewhat technical and arbitrary rule has been adopted in order to make it easier to determine whether the insured is entitled to claim a constructive total loss. By this rule it is held that a person insured by a contract of marine insurance on cargo may abandon the subject of insurance, and recover for a total loss thereof, if more than half the cargo in value is actually lost, or more than half the value would have to be expended to rescue it from peril, or if the cargo is injured to such an extent as to reduce its value more than one-half. Wallerstein v. Insurance Co., 44 N. Y. 204, 4 Am. Rep. 664; Washburn & Moen Mfg. Co. v. Reliance Marine Ins. Co., 179 U. S. 1, 21 Sup. Ct. 1, 45 L. Ed. ——. Counsel for the defendant claims that because the cargo was not destroyed physically or in specie, the court is precluded from regarding the loss as total, no matter how completely the goods may have lost all merchantable value; and he cites a number of decisions, based for the most part upon ocean policies and ocean voyages, in support of his contention. But every one of those cases, either in the phraseology of the contract or in the surrounding circumstances, differs materially from the case at bar. In the course of an elaborate discussion of the meaning of the memorandum clause, Mr. Phillips, in his work on Insurance (5th Ed. § 1769) says:

"It is a doctrine favored by some authorities, and more strongly supported by principle, that a destruction in value of an article is a total loss of it under the exception of average, divers of the preceding cases to the contrary notwithstanding. * * * An article in a condition to cost as much to turn it to account as it will fetch is, in a commercial sense, totally destroyed; and it is the commercial sense that ought to be adopted. The deterioration in value is precisely what the assured seeks indemnity for, and the loss of the whole value is to him, to all intents and purposes, a total loss of the thing; and there are not wanting cases in which it is treated as such."

In Moss v. Smith, 9 C. B. 94, Maule, J., at page 103, in defining a total loss, says:

"But, short of that, it may be physically possible to repair the ship, but at an enormous cost, and there also the loss would be total; for in matters of business a thing is said to be impossible when it is not practicable, and a thing is impracticable when it can only be done at an excessive or unreasonable cost. A man may be said to have lost a shilling when he drops it into deep water, though it might be possible by some very expensive contrivance to recover it."

Both the language and the doctrine of the last case were approved by Jervis, C. J., in Rosetto v. Gurney, 11 C. B. 186, where he said:

"In matters of business a thing is commonly treated as impossible when it is impracticable, and as impracticable when it cannot be done without laying out more money than the thing is worth."

In Wallerstein v. Insurance Co., supra, coffee and wool were insured free of particular average, and the vessel was wrecked. The insurance covered 64 bales of wool, of which 61 were recovered, and 801 bags of coffee, of which 203 were recovered, and brought to New York, and sold at auction for $2.44 in excess of the auctioneer's charge. It is true that the proportion realized from the salvage of cargo in the case at bar was greater than the proportion realized in the Wallerstein Case, but the doctrine of that case that there may be a total loss without a physical destruction, and although a portion of the goods may be ultimately delivered to the assured in specie, is strikingly applicable to the case at bar. The court said (page 217):

"Is this a total loss of the coffee? Must there be a total physical loss of the subject of the insurance, or is a total loss to the owner sufficient? In the English practice, a ship is a total loss when she has sustained such extensive damage that it would not be reasonably practicable to repair her. The ordinary measure of prudence which the courts have adopted is this: If the ship, when repaired, will not be worth the sum which it would be necessary to expend upon her, the repairs are, practically speaking, impossible, and it is a case of total loss. * * *" Pages 222, 223. In the case before us, the stranding of the vessel was, within all the authorities, of such a character as to create a total loss. She was ashore on the most perilous part of the Atlantic coast, in the depth of winter, her main deck submerged, and was incapable of restoration. 2 Pars. Mar. Ins. supra. While thus exposed to the peril of a total loss, the master abandons the vessel, and notice is given to the underwriter. The underwriter employs a wrecker, at a great expense, to visit the vessel, who, after a labor of some months, is able to recover a small portion of the cargo; among the rest, some bales of the wool, and portions of the coffee, so damaged as to be worthless. The jury have found that this effort to recover the cargo was a contrivance simply to convert into a partial what would otherwise be a total loss. In my view of the case, the loss of the coffee was total, and the right to recover became fixed when the abandonment was made. The rescue of a portion of the contents of the vessel, with whatever motive it

was done, did not undo what was already done. It could not convert into a partial loss that which, under the circumstances detailed, the law adjudged to be total."

The last three cases have recently been cited with approval by the court of appeals in Corbett v. Insurance Co., 155 N. Y. 389, 50 N. E. 282, 41 L. R. A. 318, where the expressions "total destruction," "total loss," and "partial damage" were made the subject of careful review. That case grew out of a fire loss to a dwelling house, and called for the construction of a fire policy. The policy was construed by the court of appeals to be free from partial damage, and to cover total loss or total destruction only. The roof of the building was destroyed by the fire, and the interior was so far destroyed as to render the building untenantable, although the expense of repairs only slightly exceeded one-third of the original cost of the structure. The general term had affirmed a judgment in favor of the plaintiff, upon the ground that the building no longer existed as a building. In their opinion, it no longer existed in specie; but the court of appeals reversed the judgment, and apparently concluded that an estimate according to value was the sounder criterion. The court, O'Brien, J., writing, said (page 394, 155 N. Y., page 283, 50 N. E., and page 320, 41 L. R. A.):

"In this case it is undoubtedly true that the building was damaged to such an extent as to render it untenantable, but to say that it was totally destroyed, when the owner restored it for about one-third of its original value, would be to entirely disregard controlling facts. Some just or reasonable principle must be applied to the facts in this case, in order to determine whether there was, as the plaintiff claims, a total destruction of the building; and it is not unreasonable to apply the doctrine which prevails in marine insurance with respect to the total loss of a ship or vessel insured. There it is held that the ship is a total loss when she has sustained such extensive damage that it would not be reasonably practicable to repair her. The ordinary measure of prudence which the courts have adopted is this: If the ship, when repaired, will not be worth the sum which it would be necessary to expend upon her, the repairs are, practically speaking, impossible, and it is a case of total loss."

It must also be observed that the policy in the case at bar contains a provision altogether unknown to the usual ocean marine policy. It is as follows:

"The said loss or damage to be estimated according to the true and actual cash value of the said property at the place of destination on the day of the disaster, and on the property not forwarded to its destination, the said loss or damage to be ascertained in the same manner."

This clause apparently is framed to some extent upon the phraseology of the usual fire insurance policy. The corresponding clause of the New York standard policy is as follows:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality."

In construing this clause of the fire policy, the court of appeals, in Foley v. Insurance Co., 152 N. Y. 131, 46 N. E. 318, 43 L. R. A. 664,

said (page 134, 152 N. Y., page 319, 46 N. E., and page 666, 43 L. R. A.):

"The defendant, by its contract, undertook to insure the plaintiffs against loss by fire, not exceeding the sum specified to the 'described property,' the loss or damage to be ascertained 'according to the actual cash value' of the property at the time of the fire. The parties by this contract made the value of the property insured, within the limit, the measure of the insurer's liability."

Though this provision of the defendants' policy, unfamiliar to underwriters against ocean perils, may not be absolutely controlling in determining the question here presented, it would, at least, seem to be in no wise inconsistent with the views here expressed. The important inquiry is this: not whether the plaintiff's loss should be classified technically as an absolute or a constructive total loss, as those phrases are used in other forms of policies, but whether this loss was not a total loss, within the purpose and fair intendment of this contract.

Since the argument of this appeal our attention has been called to the recent decision of the United States supreme court in the case of Washburn & Moen Mfg. Co. v. Reliance Marine Ins. Co., 179 U. S. 1, 21 Sup. Ct. 1, 45 L. Ed. ——, on appeal from the United States circuit court of appeals, in which a different doctrine is announced. That court referred to the fact that the supreme court of Massachusetts, in Kettell v. Insurance Co., 10 Gray, 144, and Mayo v. Insurance Co., 152 Mass. 172, 25 N. E. 80, 9 L. R. A. 831, had announced a contrary rule; and it also recognized inferentially the binding force of the decisions of the state courts over contracts made within the state, but declared its own liberty to construe a marine policy depending on questions of general commercial law without regard to the decisions of the state in which the action arose. Equally we are justified in holding that, as that case differs in some respects from the Wallerstein Case, supra, there is no reason why we should follow it, and thus differ from the decision of the highest court of this state upon the same subject; all the more because these views are in accord with the well-considered cases, above cited, of the supreme judicial court of Massachusetts. The supreme court of the United States held the general rule of that court to be that the insurers are not liable upon memorandum articles, except in case of actual total loss, and that there can be no actual total loss when a cargo of such articles has arrived, in whole or in part, in specie at the port of destination, but only when it is physically destroyed, or its value extinguished, by a loss of identity; and that, where the memorandum clause warranted free from average unless general, the insurer was not liable for a constructive total loss, but only for an actual total loss of the whole, or a distinct part. But this doctrine seems to me to be directly contrary to the rule laid down in the cases in this state already cited. The court referred to the differences between the jurisprudence of England and that of the United States upon the question of constructive total loss, and stated that in the latter, though not in England, "the general rule is that a damage exceeding fifty per cent. justifies abandonment, and recovery for constructive total loss," citing Marcardier v. Insurance Co., 8

Cranch, 39, 3 L. Ed. 481. It also said that this principle "is not applicable to memorandum articles in respect of which the exception of particular average excludes a constructive total loss." In the Wallerstein Case, supra, the latter point was directly passed upon as to memorandum articles insured free of particular average. That the insured articles were warranted by the assured "free from average, unless general," in a memorandum to the policy, appears from an examination of the policy in the record of the case in the court of appeals; the case as reported in 3 Rob. 528, and in 44 N. Y. 204, 4 Am. Rep. 664, failing to disclose this fact. Under these circumstances it seems to me that, as this policy was made within this state, and with a citizen of this state, it would be indecorous for us to disregard the decision of our court of appeals, although the supreme court of the United States has come to a different conclusion. I return, therefore, to the main question, as to the character of the.loss. Was it of such a character that, if the policy had provided for notice of abandonment, such notice would have converted the loss into a constructive total loss? It seems to me to have been what is known as a "salvage loss," which is defined by Mr. Richards in section 236 of his valuable work on Insurance, where he says:

"A salvage loss is a total loss diminished by salvage, and takes place in relation to goods where there is either an absolute or constructive total loss of the subject insured, but some portion of the property has been recovered by the insured. In that case the claim upon the underwriters is for the difference between the insured value and the net proceeds, and the latter are computed by deducting from the gross proceeds of the property saved all charges incurred in realizing the salvage."

For these reasons, the judgment should be affirmed.

Judgment affirmed, with costs. All concur; HIRSCHBERG and JENKS, JJ., in result.